# In the United States Court of Appeals for the Eleventh Circuit

———————————

TIMOTHY BURKE,

    *Movant-Appellant,*

v.

                             No. 23-13649-HH

UNITED STATES OF AMERICA,

    *Defendant-Appellee*

———————————

**Burke's Redacted Opposition to Government's Motion to Dismiss Appeal**

On February 26, 2024 the government filed a Motion to Dismiss as moot Mr. Burke's Appeal of the District Court's denial of his motion for return of more than 100 Tb of data which constitute the contents of his newsroom, which include confidential and privileged journalist source and reporting information, and which includes information that Mr. Burke intended to publish. Burke alleges the material was seized unlawfully and with a "callous disregard" for his constitutional rights, and its retention constitutes an unconstitutional prior restraint on Mr. Burke's ability to publish newsworthy information (Doc. 24)  The government asserts that their Indictment of Mr. Burke, nullifies any claim that the seizure and continued possession of Mr. Burke's newsroom was unconstitutional, and obviates any need for these materials to be returned.

The government also asserts that this Court need not address Mr. Burke's

claims that he needs access to the Affidavit in support of the warrant to raid his newsroom, because "the magistrate judge has since unsealed the search warrant affidavit, aside from the redaction of an IPv6 address and the home addresses of two individuals." (Gov. Motion, Doc. 24, p. 8-9). While the government here asserts that "the affidavit is unsealed," before the Magistrate Judge the government asserts that the affidavit is sealed, cannot be introduced as an exhibit, and that individuals mentioned in the Affidavit cannot be referred to in pleadings or filing. (Gov. Motion to Partially Unseal Affidavit, Doc 53, Exhibit A; Order on Motion to Unseal, Doc. 54, Exhibit B)  Indeed, the government asserts that any pleadings mentioning the Affidavit must be filed "under seal."[1] The issue is therefore not moot: Mr. Burke does not have his materials back; he continues to be restrained from publishing them; he is now also purportedly restricted from mentioning any of the names that appear throughout his already-public Appellant's Brief; and he has still not received a hearing on his motion for return of property, as required by Rule 41(g) of the Federal Rules of Criminal Procedure.

---

[1] In this response, Mr. Burke stakes out a middle ground, making general refences to what the Affidavit does not show, but eschewing any references to names of individuals who might be referenced by pseudonym in the Affidavit. Where this document references the name of a person or entity which might be referenced in the Affidavit we have redacted that name from the publicly filed document but included it in a document to be mailed to the Court for filing under seal. It is not entirely clear that even this approach is permitted by the gag order issued by the Magistrate Judge.  Indeed, this pleading has been delayed for more than a week as counsel attempted to determine exactly what the AUSA's proposed Order, adopted by the Magistrate Judge, actually means.

**1.    The Affidavit in Support of the Warrant Has NOT Been Unsealed**

The Order of the Magistrate Judge *does not unseal the affidavit*, and in fact, the affidavit remains sealed. (Doc. 54; Exhibit B) While the Order permits the parties to use the affidavit, one of the parties to this action - Times Publishing - does not have and can not obtain a copy of the document the government describes as "unsealed." It is not on the docket sheet, and not available for use. Moreover, the government takes the position that the Affidavit remains sealed, and even with any names contained therein being redacted, cannot be submitted to the Court below, or to this Court except under seal.

In addition, in its February 26, 2024 Order, the Magistrate Judge also issued the functional equivalent of a "gag order" precluding Mr. Burke and his counsel from "referring to any individual identified within the [Affidavit]" other than Mr. Burke." (Doc. 54, p. 2).[2] In short, rather than shedding light on the matter, what the government here claims to be "unsealed" is actually more restrictive than the situation before the "unsealing."

**2.    Disclosure of the Affidavit Would N o t Reveal The Names of Victims, Witnesses, and Law Enforcement Officials.**

For more than ten months the government has asserted that Mr. Burke and

---

[2] Since the Affidavit itself identifies no individual other than Mr. Burke, the Affiant and the Judge, the gag order either is superfluous, or now prohibits Mr. Burke from "referencing" any individual whose name can be gleaned from the Affidavit, even though they are not mentioned therein.

the public could not see the Affidavit because it disclosed the names of witnesses, victims, subjects, targets, and law enforcement officials. Indeed, it has done so even as it asked the Magistrate Judge to "partially unseal" the Affidavit, subject to the condition that these names be redacted by any party who attempted to "use" the Affidavit.

However, there are no names in the Affidavit, and never were. Moreover, Mr. Burke in his pleadings seeking return of his property has identified the parties he believes are at issue thus mooting the government's concerns about disclosure. The Affidavit itself notes that "[t]he identities of potential victims, witnesses, and third parties have been anonymized in this affidavit to protect their privacy and the integrity of the federal criminal investigation." They simply aren't there, and the government's repeated assertions that the Affidavit must be sealed (and remain sealed) to prevent disclosure of that information is not accurate. A significant consequence of sealing the Affidavit (and keeping it sealed for ten months) was to frustrate Mr. Burke's efforts to get his materials returned in a timely fashion so he could publish them. The government, acting on behalf of the representatives of ███████████████ who represent "███████████████ ███████████ referenced in the Affidavit as being the initiator of the criminal action, now files this Motion which substitutes as an extended sealing with the practical effect that, if granted, continues the prior restraint on publication.

**3.    The Affidavit Concealed Critical Information From The Magistrate Judge Regarding Burke's Status As A Journalist And the Nature of the Information Sought to Be Seized**

Apart from the name of the affiant and the Magistrate Judge, the only name that appears in the Affidavit is that of Mr. Burke, who is referred to as a "former journalist." Indeed, reading the Affidavit, one would never know that the government was seeking to search a reporter's newsroom and seize the contents of his newsroom because he published and caused to be published embarrassing information about Tucker Carlson and Kanye West that he found on a publicly accessible, Internet addressable website.

Not only does the Affidavit not contain the names of individuals, it does not contain the names of corporations, entities, Internet Service providers, or even the media outlets that ultimately published the information at issue. Most important, *the affidavit does not tell the Magistrate Judge that the government was seeking to seize privileged and First Amendment protected materials from a journalist* in an investigation of his publication of such materials. Rather, it actively concealed this fact. Indeed, nobody reading the Affidavit would know that the case involved the publication of newsworthy information.

**4.    The Affidavit Demonstrates That the Government Did NOT Meet the *Richey* Factors**

The government here asserts that they met the requirements of *Richey v. Smith,* 515 F.2d 1239 (5th Cir. 1975), and that they did not act in "callous disregard" for Mr. Burke's rights as a journalist under the First and Fourth Amendments,

and his wife's rights as a member of the Tampa City Council under the Fourth Amendment, because the government "had *complied with* all aspects of its own Privacy Protection Act policy and its News Media Policy during the investigation. Doc. 33 at 13, 19–25. (emphasis added). And, i t explained that it had implemented a filter protocol to protect any applicable privileges. *Id.* at 23." "Complied with" may mean that they actually obtained the required approvals, or that the United States Attorney's Office for the Middle District of Florida unilaterally decided that Mr. Burke was not a journalist, and therefore no such approvals were required.

What the government does NOT say in its Motion is that there was no "callous disregard" because the search of the journalist was approved by the Attorney General, and that the Magistrate Judge was informed of this fact.

It does not say that the Assistant United States Attorney obtained approval from the Attorney General's Office to seize tens of thousands of pages of documents and terabytes of data and video content "possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication" 42 USC 2000aa, and that there were binding protocols established to ensure that no such information was seized other than that for which "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." *Id.*

Nothing in the Affidavit suggests that this is the case. Nothing in the Affidavit suggests that the Magistrate Judge was told that the government was seizing a newsroom.

In both the Affidavit and its pleadings, the government denies that the DOJ Press Policy, the DOJ policy on the PPA,[3]and the Filter Team requirements apply because, they contend, that Mr. Burke is not a journalist, and the DOJ regulations confer no enforceable rights upon Mr. Burke. The Affidavit deliberately removes any mention of Burke's actions as a journalist. The Affidavit makes no mention of the DOJ Press Policy, or the PPA policy.[4] In fact, the Affidavit *conceals* from the Magistrate Judge the fact that the government was seeking a warrant to search and seize a newsroom - deliberately removing any mention of things like ████████████████████████████ ████████████████ or the fact that the case involves a journalist publishing

---

[3] DOJ Press Policy 28 C.F.R. § 50.10(b)(2) and the DOJ Privacy Protection Act policy 28 C.F.R. § 59.3, and 28 C.F.R. § 50.10(q) for the search and seizure, and that they coordinated this search with the Computer Crime and Intellectual Property Section of the Criminal Division as required by DOJ policy. Department of Justice Manual, Section 9-48.000 (updated May, 2022)

[4] Illustrative is *Reporters Committee v. Department of Justice*, Dkt. No.1:19-cv-02847-TFH (D.D.C., November 8, 2021) the government asserted that the Press Policy did not apply to the FBI's participation in the execution of a state search warrant to seize a newsroom and FBI agents' interviewing of the reporter, Brian Carmody, in direct contravention of 28 C.F.R. § 50.10(f)(1). The Court there held that "the specter of government misconduct looms over the entire Carmody matter" and particularly criticized the fact that the "warrant affidavit did not describe Carmody as a journalist…" The D.C. federal court noted that "a reasonable person could conclude that the alleged government impropriety occurred."

truthful information about a matter of public interest. If, in fact, the government sought and obtained DOJ approval for the search as required by DOJ policy, not only is that news to Mr. Burke, it would be news to the Magistrate Judge as well. This omission, in and of itself, constitutes a "callous disregard" for Mr. Burke's rights.

**5.    The Filter Team**

The government also contends in its Motion that it complied with the dictates of *Richey* because "it had implemented a filter protocol to protect any applicable privileges."[5] Nothing in the Affidavit suggests that the Magistrate Judge was asked to approve a Filter Team protocol (the preferred mechanism of implementing a Filter Team)[6] or indeed that the government was seeking to

---

[5] *Trump v. United States*, 625 F. Supp. 3d 1257, 1264 ( SD Fl., 2022) citing *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1245 n.6 (11th Cir. 2021) ("[Rule 41] is the proper way to come before the court to seek an injunction regarding the government's use of a filter team to review seized documents.") On appeal of the *Trump* case, this Court noted "Courts that have authorized equitable jurisdiction [under Rule 41] have emphasized the importance of identifying "specific" documents and explaining the harm from their "seizure and retention." See, e.g., *Harbor Healthcare Sys., L.P. v. United States,* 5 F.4th 593, 600 (5th Cir. 2021) (Harbor did "far more than assert vague allegations" by pointing to "thousands" of privileged documents that the government retained for four years).*Trump v. United States*, 54 F. 4th 689, 699 (11th Cir., 2022).

[6] See, e.g., Edward J. Imwinkelried, The Adequacy of Filter Team Protocols to Protect Evidentiary Privileges During the Pretrial Stage, 84 La. L. Rev. (2024) available at  https://digitalcommons.law.lsu.edu/lalrev/vol84/iss2/6   (last visited, February 26, 2024) and Rebecca Mitchell, The Search and Seizure of Digital Materials Under Warrant and Protecting Privilege: Comparative Analysis and Recommendations for Best Practice, available at
https://doi.org/10.1177/00220183231223592 (last visited February 26, 2024)

seize privileged and First Amendment protected materials, or that the Magistrate Judge was informed that Filter Team protocols were mandated by regulation. 28 C.F.R. § 50.10(o). [7]  In fact, everything in the affidavit removes any indication that a Filter Team would be required.  In light of the government's position that Mr. Burke was not a journalist, we can only speculate whether the Filter Team protocol complied with *Richey*. For example, the Affidavit specifically requests permission *to seize a computer from* ███████████ on the ground that Mr. Burke may have used that computer. However, the Affidavit omits  the fact that the computer sought was *the property of the Tampa City Counci*l, or even the fact that ████████ ███ had been reelected to the City Council a few days earlier. [8] Her name and position are omitted from the Affidavit, so that the Magistrate Judge would have no opportunity to require a Filter Team for the legislative materials that the government knew they intended to seize and examine.

**6.    Mr. Burke Continues to Suffer Irreparable Harm from the Refusal To Return Unlawfully Seized Journalist Records, Notes and Materials Intended to be Published.**

The government's principal argument is that the government may engage in a prior restraint on Mr. Burke's ability to publish truthful information

---

[7] The use of Filter Protocols are required even when the government believes that the journalist is engaged in criminal activity, and even when the government believes that the actor is no longer a journalist, if it is likely that the government will seize materials that relate to newsgathering activities that are not related to the alleged criminality.  See, 28 C.F.R. § 50.10(o) and (p).

[8] See DOJ Manual 9-85.500 and Principles of Federal Prosecution § 9-27.260 (mandating that no investigative steps be taking that would impact an election)

lawfully obtained[9] indefinitely, and deny him a hearing or an opportunity to have these materials returned so he can publish news based on them because the Indictment renders his efforts to publish "moot." This is a fundamental misunderstanding of the nature of the remedy Mr. Burke seeks -- he seeks precisely what Rule 41(g) provides, and which the criminal law does not. The harm he suffers is that he cannot publish, and cannot publish today. The fact that he can seek suppression of the seized materials at some later date does not permit him to publish them now -- the equitable remedy that is provided by Rule 41(g). Moreover, it is entirely possible that the purpose of the return of the Indictment -- which alleges that Mr. Burke used "compromised credentials"[10] to access information he intended to publish -- was to do precisely what they seek to do here: time the Indictment to the date of their response before this Court in order to continue to prevent Mr. Burke from releasing the newsworthy information. [11] The purpose of Rule 41(g) is for the Court to exercise its equitable

---

[9] It remains Mr. Burke's position that even the Indictment fails to allege (much less establish) that *any materials were obtained unlawfully*. Despite the use of terms like "access without authorization" and "stolen" the Indictment at its core simply asserts that Mr. Burke lacked the permission of the subject of his journalism to see and print the materials he obtained by visiting websites that were accessible through the use of published credentials available to anyone online. While we contend that this is not a crime, those allegations must be decided in the criminal case, not here and not now.

[10] The term "compromised credentials" is not defined in the law. Here, the Indictment alleges that Mr. Burke and CONSPIRATOR-2 found these credentials online.

[11] Indeed, the Affidavit declares that the case was initiated when ███████████, legal representation for ███████████████████ contacted the United States Attorney's Office for the Middle District of Florida…" It seems

powers to return materials seized unlawfully. The party seizing the materials to prevent publication does not get a pass simply by obtaining an indictment, and suppression does not remove the prior restraint on publication.

The "in esse" requirement was a requirement for the appealability of the denial of a Rule 41(e) [now (g)] motion under the collateral order rule of *DiBella v. United States*, 369 US 121 (1962). If the purpose of the Rule 41 action was to achieve a result in a related criminal case (such as suppression of evidence) then it was "tied to" that case, and the denial of the motion was not a collateral order and could not be appealed until the end of the criminal case. However, as this Court noted in *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means,* 11 F.4th 1235, 1245 n.6 (11th Cir. 2021), the *DiBella* test applies only where the remedy sought in the related criminal case is the same as the remedy sought in the Rule 41 action. This Court applied *DiBella* and noted:

> The Intervenors clearly seek only the return of their property. They sought to prohibit the government from reviewing seized materials until a protocol protective of the attorney-client privilege was ordered. To protect the privileged materials, they primarily asked for the court to order the return of the seized documents to prevent law enforcement from reviewing the materials and suggested, in the alternative, that an independent party could act as the filter. They do not seek to invalidate the seizure—indeed, the government currently remains in possession of the materials seized. See Oral Argument Recording at 2:36-44 (July 1, 2021) ("To be clear as we sit here today hearing the case, the materials are safe. They are in the possession of the

clear that the prosecutors have been working with lawyers for ██████████ ████████ to prevent Mr. Burke from publishing materials that are embarrassing to ███.

government."). Nor do they seek to suppress the seized materials or ask for any other relief. This is sufficient to conclude the motion was solely for the return of property.

This Court went on to note that:

> [*In re Grand Jury Proceedings ("Berry")*, 730 F.2d 716 (11th Cir. 1984) (per curiam)] directed us to consider not only the existence of a pending criminal investigation, but also to look to the purpose of the motion for the return of property. See *id.* at 717-18. If it "is obvious from a reading of the motion that appellants are attacking the validity of the search and seizure under the fourth amendment," then it is "clear that the motion is tied to the ongoing criminal investigation and to issues that may be litigated in any subsequent criminal proceedings arising out of the seizure." Id. at 718; see also *United States v. Glassman*, 533 F.2d 262, 262-63 (5th Cir. 1976)("Only if this motion was a collateral attempt to retrieve property and not an effort to suppress evidence in related criminal proceedings is it appealable.").

In the case at bar, while Mr. Burke challenges the lawfulness of the seizure, he has not challenged the probable cause behind it - nor could he have done so without the Affidavit. He has challenged the government's "callous disregard" for his rights under the First Amendment, and the fact that the seizure has acted as, and continues to act as a prior restraint on his ability to publish. This callous disregard is in no way impacted by the fact that the government has retaliated by seeking an indictment -- the remedy he seeks here is to be able to publish, not to suppress evidence. That remedy is not tied in esse or at all to any criminal matter, and this appeal is not "collateral" to that matter.

## Conclusion

The government seized Mr. Burke's newsroom without telling the

Magistrate Judge that this was what they were doing.  The government seized Mr. Burke's newsroom and more than 100Tb of data without informing the Magistrate Judge that (a) he was a journalist,  (b) there was likely to be both First Amendment protected expressive materials and privileged communications with sources and other journalists, (c) the "compromised credentials" were in fact public information and not unlawfully obtained, and (d) the purportedly "hacked" materials were being broadcast unencrypted over publicly-accessible URLs, which means that there could not possibly be a reasonable expectation of privacy attached to them. Because there was no hearing under Rule 41(g), there is no evidence that the government obtained approval to seize a newsroom, or to seize materials protected under the PPA from the required DOJ officials, or that any Filter Team protocols existed.  In fact, the government failed to reveal all such information from the Magistrate Judge, who could not tell the most basic information about this case. The government retains journalistic materials in a way that acts as a prior restraint on publication, and which continues to cause irreparable harm to Mr. Burke and to the public, and has done so in callous disregard for his rights as a journalist, in callous disregard for the First Amendment, and in callous disregard for the existence of various privileges recognized by the State of Florida and common experience.  These issues are neither moot nor tied to the criminal case.

At a minimum, Mr. Burke should receive the benefit of a hearing on the merits of his claims, as he is entitled to under Rule 41(g).

Respectfully submitted,


Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar                    COUNSEL FOR APPELLANT
Phone: (301) 547-6925
MDRasch@gmail.com
*Admitted Pro Hac Vice*


Michael P. Maddux, Esquire
Florida Bar # 964212
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Phone: (813) 253-3363
mmaddux@madduxattorneys.com


## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the limit of 5200 words or less for responses under Fed. R. App. P. 27(d)(2)(A), excluding the parts of the document exempted by Fed. R. App. P. 32(f), because this document contains 3937 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 13 pt. Book Antiqua.

*s/Michael P. Maddux*
Michael P. Maddux
Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Response in Opposition with the Clerk of Court via CM/ECF on the 6th day of March, 2024. I further certify that I have served a true and correct copy of the foregoing Response in Opposition via CM/ECF on this 6th day of March, 2024, upon Jay Trezevant, Esquire.

_**s/Michael P. Maddux**_
Michael P. Maddux
Counsel for Appellant

# UNITED STATES COURT OF APPEALS
# ELEVENTH CIRCUIT

**TIMOTHY BURKE,**

**Appellant,**

**v.**                                   **Appeal Number: 23-13649**

**UNITED STATES OF AMERICA,**

**Appellants.**

_____/

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, TIMOTHY BURKE, by and through the undersigned Counsel, hereby discloses the following pursuant to this Court's interested persons order:

1. Flynn, Sean P.

2. Jung, William F.

3. Locicero, Carol J.

4. Philipson, Jon Michael

5. Maddux, Michael P.

6. Rasch, Mark D.

7. Times Publishing Company

8. Trezevant, Jay G.

9. United State of America

Dated: 3/6/2024                        Respectfully Submitted,

                                       **MICHAEL P. MADDUX, P.A.**

                                       *S/Michael P. Maddux*
                                       Michael P. Maddux, Esquire
                                       Florida Bar Number: 964212
                                       Attorney for Appellant
                                       2102 West Cleveland Street
                                       Tampa, Florida 33606
                                       Phone: (813) 253 - 3363
                                       Facsimile: (813) 253 - 2553
                                       E-Mail:
                                       mmaddux@madduxattorneys.com
                                       jszymczak@madduxattorneys.com
                                       ctonski@madduxattorneys.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMES PUBLISHING COMPANY

v.                                          CASE NO. 8:23-mc-00014-WFJ-SPF
                                                      8:23-mj-1541-SPF
UNITED STATES OF AMERICA

**UNITED STATES' MOTION TO PARTIALLY UNSEAL
AFFIDAVIT FOR SEARCH WARRANT**

The United States of America moves this court to partially unseal the below-identified Affidavit in Support of Application for Search Warrant (the "PC Affidavit") with proposed narrowly tailored redactions, so that the United States can provide a copy of the redacted PC Affidavit to Timothy Burke. In support, the United States offers as follows:

1.      On May 4, 2023, upon consideration of an application and related PC Affidavit, this Court found probable cause supported the United States' application for a warrant to search the Tampa residence of Timothy Burke for records and evidence relating to violations of 18 U.S.C. § 1030 (intentional unauthorized access of a computer), and 18 U.S.C. § 2511 (intentional interception and disclosure of wire, oral, or electronic communication), and issued the pertinent warrant. Doc. 18-1.[1]

---

[1] The underlying search warrant records were originally filed in the case styled *In the Matter of the Search of Premises Located at [Timothy Burke's Residence in Tampa, Florida]*, No. 8:23-mj-1541-SPF.

Exhibit A

2.      On the same day, this Court, in the interests of justice, entered an Order, granting the United States' motion to seal the Application for Search Warrant, Warrant, PC Affidavit, and related motion to seal. *Id.*

3.      FBI agents executed the warrant at the Burke residence on May 8, 2023. Doc. 1. The search team left with multiple electronic devices and hard copy items, which are particularized in the Evidence Collected Item Log, filed with this Court as part of the warrant return. *Id.*

4.      On July 21, 2023, Burke filed a motion to unseal the PC Affidavit and a companion motion seeking, in part, the return of all items and information seized from his residence, and he sought a hearing on his motions. Docs. 25 and 26. Following a response by the United States, Doc. 33, and upon consideration of the underlying case filings, the magistrate judge entered an order on September 22, 2023, denying Burke's motion to unseal the PC Affidavit without prejudice. Doc. 35. The magistrate judge also denied Burke's request for a hearing. Doc. 36.

5.      Burke then filed a Motion for Reconsideration and Objections to Report and Recommendation of Magistrate Judge on Movant's Motion Pursuant to Fed. R. Crim. P. 41(g) ("Motion for Reconsideration"). Docs. 38 and 39. The United States responded in opposition to Burke's Motion for Reconsideration on October 20, 2023. Doc. 40. Thereafter, the District Court entered an Order that construed Burke's Motion for Reconsideration as an objection to the magistrate

judge's Order and denied the motion. Doc. 41. The District Court also denied as moot Burke's related motion for return of property. Doc. 42.

6.      Burke filed a Notice of Appeal of the District Court's Orders on November 1, 2023. Doc. 43. That appeal is pending. *See Timothy Burke v. United States of America*, 23-13649-H.

7.      On February 15, 2024, a federal grand jury sitting in the Middle District of Florida returned a fourteen count indictment against Timothy Burke, charging Burke in Count One with engaging in a conspiracy from in or around February 2022, and continuing through May 2023, in violation of 18 U.S.C. § 371; in Counts Two through Seven with intentionally accessing a protected computer without authorization, in violation of 18 U.S.C. § 1030(a)(2)(C); in Counts Eight through Twelve with intentional interception of a wire, oral, or electronic communication, in violation of 18 U.S.C. § 2511(1)(a); and in Counts Thirteen and Fourteen with intentionally disclosing an illegally intercepted wire, oral, or electronic communication, in violation of 18 U.S.C. § 2511(1)(c). *See United States v. Timothy Burke*, Case No. 8:24-cr-0068-KKM-TGW (the "Burke Case"). Burke Case, Doc. 1. The indictment also includes forfeiture allegations that identify, among other items, twenty items subject to forfeiture that were seized from Burke's residence on May 8, 2023. *Id.*

8.      Burke was arrested today, February 22, 2024, and his indictment is now unsealed.

9.      Notwithstanding the recent indictment against Burke, the investigation concerning the conduct of Burke and others is still ongoing.

10.     The United States is therefore requesting that this Court partially unseal the PC Affidavit so that the United States can provide a copy to Burke for his review and use in this case and in the Burke Case, with narrowly tailored redactions—an IPv6 address in paragraph 53 and related footnote 8, and a home address of two individuals listed in the same footnote, pursuant to Fed. R. Crim. P. 49.1.

11.     So that this Court can review and consider the United States' proposed tailored redactions, the United States will submit to the District Court *in camera* a copy of the sealed PC Affidavit with the proposed redactions and a copy of the PC Affidavit with the proposed redactions highlighted and reviewable.

12.     As the underlying federal criminal investigation is still ongoing, the United States further requests that the seal otherwise remain in place to protect and safeguard the integrity of the ongoing investigation, the safety and security of law

enforcement personnel, the privacy of unnamed and uncharged subjects of the

investigation, and the privacy of third-party fact witnesses and potential victims.


Respectfully submitted,

ROGER B. HANDBERG
United States Attorney


By:    _/s/ Jay G. Trezevant_____
       Jay G. Trezevant
       Assistant United States Attorney
       Florida Bar No. 802093
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       Telephone:   (813) 274-6076
       Facsimile:    (813) 27-6125
       E-mail:       jay.trezevant@usdoj.gov


5

**Times Publishing Company v. U.S.**            **Case No. 8:23-mc-00014-WFJ-SPF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2024, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

   Michael Maddux, Esq.
   Mark Rasch, Esq.
   Carol J. Locicero, Esq.


       */s/ Jay G. Trezevant*
       Jay G. Trezevant
       Assistant United States Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMES PUBLISHING COMPANY

v.                                                CASE NO. 8:23-mc-00014-WFJ-SPF
                                                             8:23-mj-1541-SPF

UNITED STATES OF AMERICA

**<u>ORDER</u>**

Before the Court is the *United States' Motion to Partially Unseal Affidavit for Search Warrant* in the instant case. Upon consideration, the Court grants the United States' motion and **ORDERS**:

1.      The Affidavit in Support of Application for Search Warrant ("Affidavit in Support") is partially unsealed with redactions and the United States may provide a copy of the Affidavit in Support and its attachments to Timothy Burke for review and use in this case and in *United States v. Timothy Burke*, Case No. 8:24-cr-0068-KKM-TGW (the "Burke Case").

2.      **IT IS FURTHER ORDERED** that, should Timothy Burke make any use of the Affidavit in Support and/or its attachments in this case or in the Burke Case, the United States may also use the Affidavit in Support and its attachments in the same case;

3.      **IT IS FURTHER ORDERED** that, should any party make use of or refer to the Affidavit in Support and/or its attachments in public filings

Exhibit B

or argument in this case or in the Burke Case, that party shall, absent Court permission, redact or otherwise refrain from referring to any individual identified within the document other than a defendant charged in the Burke Case; and

4.    **IT IS FURTHER ORDERED** that the Affidavit in Support of Search Warrant and its attachments shall remain otherwise sealed by the Clerk of the Court until May 4, 2024, unless extended by further order of the Court.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 22nd day of February 2024.

SEAN P. FLYNN
United States Magistrate Judge

Copies to:    Jay G. Trezevant
              Assistant United States Attorney